IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Owens,                       :
                                           :
                 Petitioner    :
                                           :
           v.               : No. 507 C.D. 2024
                                           : Submitted: March 4, 2025
City of Philadelphia                :
(Workers' Compensation      :
Appeal Board),                :
                Respondent : 

BEFORE:    HONORABLE RENÉE COHN JUBELIRER, President Judge
                  HONORABLE MICHAEL H. WOJCIK, Judge
                  HONORABLE MATTHEW S. WOLF, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK                           FILED: March 26, 2025

James Owens (Claimant) petitions for review from an April 5, 2024 decision and order of the Workers' Compensation Appeal Board (Board), affirming a decision and order of a Workers' Compensation Judge (WCJ). The WCJ's decision and order denied Claimant's petitions for reinstatement of workers' compensation benefits (Reinstatement Petition) and for penalties (Penalty Petition) (collectively, Petitions) against the City of Philadelphia (Employer or City) pursuant to the Workers' Compensation Act (Act).[1] For the reasons that follow, we affirm.

---

[1] Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1-1041.1; 2501-2710.

## Background

Claimant is employed by Employer as a police officer. Claimant was diagnosed with COVID-19 (COVID) on October 17, 2021. Immediately after his diagnosis, Claimant notified his supervisor, Sergeant Ward, that he was diagnosed with COVID and that he thought he contracted the virus at work. Claimant's last day of work before his diagnosis was October 9, 2021. WCJ's Decision, Finding of Fact (F.F.) No. 5(a), 5(c)-(e). Claimant was out of work from October 17, 2021, to May 3, 2022, because he had difficulty breathing. During the time Claimant was not working, he received wage continuation benefits, referred to as "E-time," until around March 5, 2022. After that date, he was required to use his accrued sick leave. *Id.*, F.F. No. 5(g), 5(i).

On June 29, 2022, Claimant filed the instant Petitions, alleging that Employer "unilaterally stopped wages in lieu of Compensation forcing Claimant to run accrued time." Certified Record (C.R.) at Nos. 2, 3. The matter proceeded before the WCJ.

## Claimant's Evidence

Claimant testified on his own behalf via a deposition held on August 22, 2022.[2] Claimant related that he had been a police officer for 26 years and was assigned to the Center City District. Claimant testified that following his diagnosis, he was hospitalized for seven days with breathing issues. He could not eat and was weak and nauseated. Claimant did not have these issues prior to his COVID diagnosis. WCJ's Decision, F.F. No. 5(a), 5(f).

---

[2] Claimant's deposition can be found in the Certified Record at No. 16.

Claimant admitted that after he began missing time from work in October 2021, he did not ask for injured on duty (IOD) benefits. Furthermore, Claimant did not fill out a "COPA II" form at any time.[3] Claimant was aware that that E-time was different from IOD benefits due to past experiences. Claimant confirmed that E-time was paid as his regular taxed salary and that he was able to see his own doctors during COVID treatment, as opposed to "City doctors" who would have treated him if he was receiving IOD benefits. WCJ's Decision, F.F. No. 5(j). At the time of his testimony, Claimant still had a residual cough and a rash that he related to COVID. Nevertheless, Claimant had returned to work. *Id.*, F.F. No. 5(k).

**Employer's Evidence**

In its defense, Employer offered the August 15, 2022 deposition testimony of Barry Scott, its Deputy Finance Director for Risk Management (Risk Management) and its Risk Manager (Mr. Scott) and the August 25, 2022 deposition testimony of Lieutenant Donald Lowenthal, the Philadelphia Police Department's (Department) Infection Control Officer (Lieutenant Lowenthal).[4]

Mr. Scott testified that he has served in his position since 2003. Risk Management administers several different types of disability benefits to Department

---

[3] "COPA II" is shorthand for "City of Philadelphia Accident, Injury, Illness Form." *See* Deposition of Barry Scott, Certified Record No. 19 at 7.

[4] Mr. Scott's deposition can be found in the Certified Record at No. 20. Lieutenant Lowenthal's deposition can be found in the Certified Record at No. 21.

police officers, including workers' compensation, Heart and Lung benefits,[5] and benefits pursuant to Act 17.[6]  When Department police officers believe they have sustained a work injury, they report the injury to their supervisor and the supervisor fills out a COPA II form.  From there, the supervisor and the Department's third-party administrator, PMA Management Corporation (PMA), investigate the alleged injury, and PMA determines if the claim is compensable.  In turn, PMA notifies the employee whether their claim has been accepted or denied and what, if any, benefit they are to receive.

On March 23, 2020, following a stay-at-home order issued by the Employer, Risk Management, along with other members of City government, began "addressing how to protect City workers from contracting COVID as well as ways to minimize the spread in the community as it impacted City operations." Deposition of Barry Scott at 10.  Mr. Scott related that in the early days of COVID, Risk Management did not have a written policy for police officers who believed that they contracted COVID at work.  Furthermore, Mr. Scott testified, at no time throughout the pandemic was there a Risk Management written position that precluded police officers from making claims if they believed they contracted COVID at work.

With regard to E-time, Mr. Scott then explained that "E[-]time, or excused time, is a timekeeping tool that -- which enables an employee to continue to receive their salary when they can't or they're not at work for whatever reason."

---

[5] The Heart and Lung Act, Act of June 28, 1935, P.L. 477, *as amended*. 53 P.S. §§637-638, provides public safety officers with their full salary while they recover from temporary, work-related ailments.

[6] Act of April 29, 2020, P.L. 118, No. 17, 35 Pa.C.S. §§57A01-02.  Act 17 provides that a person who is eligible for Heart and Lung Act benefits who is temporarily incapacitated from performing his or her duties following a COVID diagnosis may receive up to 60 days of Heart and Lung Act benefits.

4

Deposition of Barry Scott at 12. To Mr. Scott's knowledge, employees on E-time historically continued to receive their regular salary and accrue benefits and did not deplete their personal leave time. From Risk Management's perspective, if a police officer received E-time because of COVID, it was not an acknowledgment that he or she had contracted COVID at work; rather

> [i]t was meant to signify that [Employer] was not trying to punish these officers and that it was -- so that they were not losing anything by being in this status, that this was, you know, a situation we were not expecting but we were looking to have a situation where, you know, folks who succumbed to this condition were not -- weren't financially penalized by the condition.

*Id.* at 13. Mr. Scott emphasized that E-time was not sick leave or personal time off but was a "sort of an administrative timekeeping category." *Id.* at 14. Mr. Scott confirmed that if a police officer filled out a COPA II form and the investigation determined that he or she did contract COVID at work, they would not be put on E-time, but would be placed on a disability benefit under the employee disability program.

Mr. Scott testified that in January 2022, Employer became aware that several Department police officers who claimed disability due to long-haul COVID were still out of work and receiving E-time. Employer decided to transition the officers from E-time to Act 17 benefits. Mr. Scott indicated that once their Act 17 benefits ceased, the officers would have to use their accrued sick time if they did not return to work. It was after this change that many of these officers filed for workers' compensation benefits although they had not previously sought disability benefits from Employer related to their COVID diagnoses.

On cross-examination, Mr. Scott acknowledged that he is not a Department employee and that Risk Management "provides direction to departments

5

across the City in order to minimize the risk to City employees from hazards on the job[,]" but it does not have "a managerial authority to control the actions taken in a particular department." Deposition of Barry Scott at 21. Mr. Scott further acknowledged that in 2020 and 2021, Risk Management was not actively involved in contact tracing "which might have identified cases in the Department." *Id.* at 25. Finally, Mr. Scott indicated that he was never advised that Department supervisors were telling officers that they could only receive E-time for COVID and that COPA II forms were unnecessary.

For his part, Lieutenant Lowenthal testified that he had been serving as the Department's Infection Control Officer since 2007. He explained that prior to March 2020, he was involved in coordinating care and testing of police officers who had bodily fluid exposures. In March 2020 the nature of his position changed from handling bodily fluid exposures to "nothing but C[OVID]." Deposition of Lieutenant Donald Lowenthal at 10. Lieutenant Lowenthal became responsible for communication with Department officers who may have been infected with COVID. Lieutenant Lowenthal described various COVID policies implemented by Employer beginning in March 2020. While Lieutenant Lowenthal did not write the policies, he did interpret them and answer questions. Lieutenant Lowenthal indicated that when asked by Department supervisors how to report an employee who was out with COVID on the Daily Activity Report, he indicated that the policies provided that those employees should be listed as being on E-time, regardless of whether the COVID was work-related or non-work-related. Further, Lieutenant Lowenthal related that if a Department supervisor asked him whether they should fill out a COPA II form for an officer who claimed to have contracted COVID from work, he would advise the supervisor to do so. Lieutenant Lowenthal acknowledged that the

6

first time a Department policy indicated that a COPA II form should be completed when an officer believed he or she contracted COVID at work was in July 2022.

**WCJ's Decision**

Based on his review of the evidence, the WCJ denied Claimant's Petitions. In reaching this decision, the WCJ made following, relevant Findings of Fact.

> 11. This WCJ has reviewed Claimant's testimony and finds his testimony credible for the most part. Claimant's testimony is credible that he experienced [COVID] symptoms in October 2021 and sought medical attention for the same. . . . [T]his WCJ rejects the testimony of Claimant to the extent he may have identified any specific source or cause of his exposure to the [COVID] virus or any opinion that his symptoms were due to work-related exposure to the virus or any other medical opinions offered by Claimant. Claimant did not complete a COPA II [form] despite being aware of the procedure.
>
> 12. This WCJ reviewed [Mr. Scott's] testimony and finds his testimony credible. . . .
>
> 13. This WCJ has reviewed [Lieutenant Lowenthal's] testimony and finds his testimony to be credible. . . .

WCJ's Decision, F.F. Nos. 11-13.

> Pertinent here, the WCJ made the following Conclusions of Law.
>
> 3. While this WCJ is aware of the unprecedented scope and impact of the C[OVID] pandemic, including the complexities faced by first-responder employees, employers, carriers, and third-party administrators in navigating, mitigating, and balancing exposure and infection with the continued provision of public health and safety services, such circumstances do not abrogate the necessary statutory and procedural requirements set forth by the Act. Here, Claimant filed a Reinstatement Petition;

7

however, there is nothing to reinstate as liability for Claimant's diagnosis has never been accepted by, or apportioned to, Employer.

. . . .

5. Employer's placing of Claimant on "E-time" did not indicate "wages in lieu of compensation" such that Employer is estopped from disavowing its acceptance of Claimant diagnosis . . . . Employer's payment of E-time in the present case, for all employees who contracted [COVID] was not intended to be a wholesale acceptance of [COVID] diagnoses as work-related. Per the credible testimony of [Mr. Scott], this was an accommodation afforded to Employer's employees in recognition of the massive scope and potentially crippling effect on Employer's services, and its employees, should it not mitigate [COVID] exposure. While it is possible that Claimant contracted [COVID] while working, Claimant would bear the burden to prove same under a proper and necessary Claim Petition. Even were this WCJ to consider Claimant's Reinstatement Petition as a Claim Petition, he failed to present the necessary evidence regarding the same. . . . Claimant's Reinstatement Petition is denied.

6. Employer did not violate the Act. Claimant's Penalty Petition is denied.

WCJ's Conclusions of Law Nos. 3, 5-6 (citations omitted).

Claimant appealed and the Board affirmed. Claimant now appeals to this Court.[7]

---

[7] This Court's review is limited to determining whether the WCJ's findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *DiLaqua v. City of Philadelphia Fire Department (Workers' Compensation Appeal Board)*, 268 A.3d 1, 4 n.5 (Pa. Cmwlth. 2021). "Substantial evidence" is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Waldameer Park, Inc. v. Workers' Compensation Appeal Board (Morrison)*, 819 A.2d 164, 168 (Pa. Cmwlth. 2003).

## DISCUSSION

On appeal, Claimant argues that the E-time payments he received were made in lieu of compensation for his work-related COVID, that Employer's payment of E-time was an admission of liability, and that Employer's payment of E-time benefits estopped it from denying liability under the Act. Claimant further argues that the WCJ erred in denying his Penalty Petition because Employer accepted liability for a work-related injury, and Employer violated the Act by unilaterally terminating payments for his work-related injury. In the recent case of *Brown v. City of Philadelphia (Workers' Compensation Appeal Board)*, 330 A.3d 12 (Pa. Cmwlth. 2025), this Court performed an exhaustive analysis of the identical issues raised here, and issued a well-reasoned opinion affirming the Board. *See also Clarke v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 508 C.D. 2024, filed January 17, 2025); *Tymes v. City of Philadelphia (Workers' Compensation Appeal Board)* (Pa. Cmwlth., No. 464 C.D. 2024, filed January 29, 2025).[8] For the reasons set forth in *Brown, Clarke*, and *Tymes*, we conclude there was no error of law or abuse of discretion in denying Claimant's Petitions.

Accordingly, the order of the Board is affirmed.

 

MICHAEL H. WOJCIK, Judge

Judge Dumas did not participate in the decision of this case.

---

[8] Unreported memorandum opinions of this Court filed after January 15, 2008, may be cited for their persuasive value pursuant to Rule 126(b) of the Pennsylvania Rules of Appellate Procedure, Pa.R.A.P. 126(b), and Section 414(a) of the Court's Internal Operating Procedures, 210 Pa. Code §69.414(a).

9

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

James Owens, : 
: 
Petitioner : 
: 
v. : No. 507 C.D. 2024
: 
City of Philadelphia : 
(Workers' Compensation : 
Appeal Board), : 
Respondent : 

# **O R D E R**

AND NOW, this 26th day of March, 2025, the April 5, 2024 order of the Workers' Compensation Appeal Board is AFFIRMED.

_____
MICHAEL H. WOJCIK, Judge